

The following constitutes
the order of the court. Signed July 20, 2015

_Charles Novack_
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>PW SUPERMARKETS, INC.,<br>    Debtor. | Case No. 15-cv-02615-PJH<br>Bankruptcy Case 14-44182 CN<br>Chapter 7 |
| UFCW & EMPLOYERS BENEFIT TRUST FUND, et al.,<br>    Plaintiffs,<br>vs.<br>JOY LYNN BELLI, et al.,<br>    Defendants. | Adversary No. 14-4150<br><br>**RECOMMENDATION TO DISTRICT COURT REGARDING WITHDRAWAL OF THE BANKRUPTCY REFERENCE** |

    On June 3, 2015 defendants Stephen Pahl and Pahl & McCay, P.C. (collectively "Pahl & McCay") filed a motion to withdraw the bankruptcy reference on the claims for relief asserted against them in this adversary proceeding. For the reasons stated below, the bankruptcy court recommends that the District Court allow the bankruptcy court to resolve all pre-trial matters before it withdraws the reference.

    On May 17, 2013, plaintiffs UFCW & Employers Benefit Trust Fund, UFCW- Northern California Employers Joint Pension Trust Fund, and Marc Del Piero, Chapter 7 Trustee for P.W. Supermarkets, Inc. (the "Plaintiffs") commenced this adversary proceeding against Pahl & McCay

1

and numerous other entities and individuals arising from a series of complex, pre-petition workout negotiations in which Pahl & McCay represented debtor PW Supermarkets, Inc. and several of its insiders.[1] Plaintiffs assert legal malpractice and breach of fiduciary duty claims against Pahl & McCay, contending that the firm and its attorneys' representation of multiple parties created an untenable conflict of interest, resulting in transactions which benefitted only the insiders to the extreme financial detriment of PW Supermarkets, Inc. and its unsecured creditors.[2] Pahl & McCay timely answered the complaint, and the answer included a jury trial demand.

I.   The Claims

Plaintiffs' claims arise from a sufficiently similar set of facts to require this court to conduct all pre-trial proceedings. Plaintiffs assert in their third amended complaint that in February 2010, PW Supermarkets, Inc. ("PW Supermarkets") defaulted on approximately $9 million in secured debt owed to its primary supplier, Unified Grocers. To remedy this, PW Supermarkets and certain of the Insiders (including FBJ Homestead, from which PW Supermarkets leased a valuable piece of real property) executed a forbearance agreement in May 2010 which required them to sign a note in favor of Unified and guarantee PW Supermarket's debts to Unified. FBJ Homestead also provided to Unified Grocers a deed of trust on its real property as security for these obligations. The forbearance agreement also provided that an involuntary bankruptcy against PW Supermarkets would constitute a default under the note, guarantee and deed of trust. Pahl & McCay negotiated the forbearance agreement on behalf of PW Supermarkets and the Insiders.

In April 2010, PW Supermarkets also began negotiating a workout with its general unsecured creditors (the "Creditors Committee"). PW Supermarkets and the Creditors Committee believed that

---

[1] The parties involved or affected by these transactions were the significant shareholders and officers of PW Supermarkets, along with various limited partnerships controlled by these individuals. While not all of these individuals and entities are alleged to have participated in each of the negotiations and agreements at issue, they will, for ease of reference, be collectively referred to as the "Insiders."

[2] The Plaintiffs amended their complaint on July 12, 2013, March 7, 2014, and July 3, 2014. All further references to the domplaint herein shall refer to the third amended complaint filed on July 3, 2014.

2

they could generate a return to the general unsecured creditor body by (a) selling substantially all of the PW Supermarkets' assets and certain real property held by another insider, FBJ Livermore, and (b) subordinating the Insiders' unsecured claims to those held by the Creditors Committee (the "Workout Agreement"). PW Supermarkets and the Creditors Committee also explored selling PW Supermarkets as a going concern. Any such sale would have included PW Supermarkets' real property lease with FBJ Homestead, which was one of its most valuable assets. Pahl &McCay advised PW Supermarkets and the Insiders in these negotiations.

Plaintiffs allege in their complaint that the Insiders never intended to cooperate with any asset sale or claim subordination, and instead used PW Supermarkets' negotiations with Unified and the Creditors Committee as a smokescreen to negotiate various real property deals that only protected their interests. Plaintiffs assert that these transactions constituted (among other things) avoidable fraudulent conveyances and preferential transfers (which are "core" proceedings in the bankruptcy court). For example, Plaintiffs allege that the Insiders - without informing the Creditors Committee - caused FBJ Homestead in September 2010 to sell its real property and terminate PW Supermarkets' lease without any consideration. Pahl & McCay allegedly advised certain of the Insiders in connection with the FBJ Homestead sale.

In the midst of the Insiders' separate negotiations, PW Supermarkets determined that it could not sell itself as a going concern, and it informed the Creditors Committee that it planned to cease operations and liquidate. The Creditors Committee responded by informing PW Supermarkets that it was considering whether to file an involuntary bankruptcy petition.

Plaintiffs allege that the Insiders then engaged in a series of misrepresentations designed to delay the filing of an involuntary bankruptcy petition to protect their own interests.[3] Plaintiffs allege that the Insiders proposed to amend the Workout Agreement by having FBJ Homestead pay $13.1 million to PW Supermarkets from the sale of the FBJ Homestead real property, $4 million of which constituted compensation for the termination of PW Supermarkets' FBJ Homestead lease. PW

---

[3] Plaintiffs allege that the Insiders feared that an involuntary bankruptcy would derail the sale of the FBJ Homestead real property because of complications surrounding lease rejection in bankruptcy and trigger their personal guarantees to Unified.

3

Supermarkets would then use these funds to satisfy Unified's secured claims, thereby creating substantial equity in PW Supermarkets' remaining assets for the Creditors Committee. Pahl & McCay represented PW Supermarkets and the Insiders in these negotiations. Plaintiffs allege that these proposed amendments were yet another smokescreen which allowed the Insiders to negotiate a separate agreement with Unified. Plaintiffs allege that the Insiders and Unified ultimately executed a "Transfer Agreement" whereby Unified would, among other things, receive $12.1 million from the sale of the FBJ Homestead real property, and, as consideration, release certain claims against the Insiders and transfer its secured claims against PW Supermarkets to them. Plaintiffs allege that in mid- November 2010 (soon after the Transfer Agreement was signed), the Insiders abruptly ended the Workout Agreement amendment negotiations and caused PW Supermarkets' leasehold interest in the FBJ Homestead real property to be transferred without consideration. Plaintiffs allege that Pahl & McCay represented the Insiders during all of these negotiations.

On April 4, 2011, the UFCW Funds filed an involuntary Chapter 7 bankruptcy petition against PW Supermarkets, and an order for relief was entered on May 10, 2011.

Plaintiffs allege that Pahl & McCay's joint representation breached their fiduciary obligations to PW Supermarkets and constituted legal malpractice. Some of Plaintiffs' claims against the Insiders (such as their fraudulent conveyance, preference, and equitable subordination claims) also arise from these pre-petition negotiations and agreements.

II.  Motion to Withdraw the Reference

"The district court may withdraw, in whole or in part, any case [referred to the Bankruptcy Court] on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Bankruptcy Local Rule 5011-2 authorizes a bankruptcy judge to provide the District Court with a recommendation regarding the disposition of a motion to withdraw the reference.

A determination of "cause" under 28 U.S.C. § 157(d) generally is a function of whether the bankruptcy court may issue a final judgment or order on the claims at issue. *McPherson v. Bank of Am., N.A. (In re McPherson)*, 2014 U.S. Dist. LEXIS 162596, *1 (D. Nev. Nov. 19, 2014); *Burkart v. Pratap*, 2015 U.S. Dist. LEXIS 27858, *7 (E.D. Cal. Mar. 6, 2015). A District Court may also consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of

4

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farm v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997).

The bankruptcy court cannot enter a final judgment on the Pahl & McCay claims for relief. Bankruptcy courts may issue final judgments and orders in connection with "core proceedings." 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(A)-(P) contains a non-exhaustive list of "core proceedings." The United States Supreme Court has held that in certain cases, bankruptcy courts lack constitutional authority to enter final judgments on "core" claims. *Stern v. Marshall*, 131 S. Ct. 2594, 2608-20 (2011). A bankruptcy court may also hear "non-core" proceedings that are otherwise related to the bankruptcy case. 28 U.S.C. § 157(c)(1). A bankruptcy court cannot, however, enter a final order or judgment on non-core claims without the consent of all parties. 28 U.S.C. § 157(c)(2). In lieu of entering a final order on non-core claims that are otherwise related to the bankruptcy case, a bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy court's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). The Pahl & McCay claims for relief arise entirely under California law and are non-core.

Pahl & McCay obviously has not consented to this court entering a final judgment herein, and their jury demand furthermore prevents this court from even submitting proposed findings of fact and conclusions of law. 28 U.S.C. § 157(e) authorizes the bankruptcy court to conduct a jury trial only with the express consent of the parties, and Pahl & McCay has not consented. While Pahl & McCay have not asked this court to determine the timeliness of their jury demand and their right to a jury trial under B.L.R. 9015-2(a), this court may do so under its own motion. B.L.R. 9015-2(a) provides in pertinent part that "[i]n any proceeding in which a demand for jury trial is made, the Bankruptcy Judge shall, upon the motion of one of the parties, or upon the Bankruptcy Judge's own motion, determine whether the demand was timely made and whether the demanding party has a right to a jury trial."

The Pahl & McCay defendants are entitled to a jury trial on the subject claims for relief under

5

RECOMMENDATION TO DISTRICT COURT
Case: 14-04150   Doc# 161   Filed: 07/20/15   Entered: 07/20/15 14:44:05   Page 5 of 7

the California State Constitution. *See* Cal. Const., art. I, § 16. *See e.g.*, *American Motorists Ins. Co. v. Superior Court* (1998) 68 Cal. App. 4th 864, 871 (*citing Abbott v. City of Los Angeles* (1958) 50 Cal. 2d 438, 462)); *Ceriale v. Superior Court* (1996) 48 Cal. App. 4th 1629, 1634-1635 (fact that equitable principles could come into play "did not abrogate the constitutional jury trial right," therefore plaintiff was entitled to jury trial on claims for breach of contract, breach of fiduciary duty, and professional negligence). Pahl & McCay also timely included their jury demand in their answer. *See* Federal Rule of Bankruptcy Rule 9015(a).

Regardless of their jury demand, B.L.R. 9015-2(b) authorizes this court to retain the Pahl & McCay claims until all pre-trial matters are resolved. B.L.R. 9015-2(b) provides that "[i]f the Bankruptcy Judge determines that the demand for a jury trial was timely made and the party has a right to a jury trial, and if all parties have not filed written consent to a jury trial before the Bankruptcy Judge, the Bankruptcy Judge shall, after having resolved all pre-trial matters, including dispositive motions, certify to the District Court that the proceeding is to be tried by a jury and that the parties have not consented to a jury trial in the Bankruptcy Court, and shall include in such certification, a report of the status of the proceeding and a recommendation on when the matter would be suitable for withdrawal from the Bankruptcy Court." The Certification to the District Court shall include "a report of the status of the proceeding and a recommendation on when the matter would be suitable for withdrawal from the Bankruptcy Court." *Id*.

III. Recommendation

The bankruptcy court is intimately familiar with this litigation and capable of resolving pre-trial disputes. *See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9th Cir. 2007). The court believes that the parties are still conducting discovery on all claims for relief, and a status conference is scheduled before the bankruptcy court on August 3, 3015, at which time the court intends to set discovery cutoff dates. Accordingly, given the overlap in the facts underlying certain of the claims for relief herein, this court's authority under B.L.R. 9015-2(b), and the need to avoid duplicative litigation and conserve judicial resources, the bankruptcy court recommends that the District Court delay withdrawing the reference until all pre-trial matters are resolved and the bankruptcy court issue its B.L.R. 9015-2(b) Certification.

6

**COURT SERVICE LIST**

ALL RECIPIENTS ARE ECF FILERS